1820.

KERSHAW<br>v.<br>THOMPSON.

Order accordingly.

---

## KERSHAW *against* THOMPSON and others.

The power of the Court to apply the remedy in the case, is co-extensive with its jurisdiction over the subject matter.

Thus, when a foreclosure of the equity of redemption and sale of mortgaged premises is decreed, and the mortgagor or defendant, or any person who has come into possession under him, pending the suit, refuses to deliver up the possession, on demand, to the purchaser under the decree, the Court, on motion for that purpose, will order the possession to be delivered to the purchaser, and not drive him to an action of ejectment at law; though the delivery of possession is not made a part of the decree.

In case of disobedience to such order, an *injunction* issues, of course, on affidavit of service of the order, &c. to enjoin the defendant to deliver possession: And on proof of service of the injunction, and a refusal of the party to comply, a *writ of assistance* is issued, of course, to the sheriff.

Where the delivery of possession is made a part of the decree of fore-closure and sale, a *writ of execution* of the decree is the proper remedy, in case of disobedience.

THE petition of *Jacob Berry*, one of the defendants, stated, that on the 10th of *August* last, he became a purchaser of the premises mentioned in the pleadings in this cause, which were sold under a decree of this Court. That on the 12th of *August*, the master executed a deed to him, for the consideration of eight thousand three hundred and fifty dollars, being the price at which the premises were struck off, and deemed to be their full value. That within ten days after the conveyance, he applied to the defendant, *Elizabeth Thompson*, who was and is in possession of the premises, and requested a delivery of the possession to him; but she refused to give possession, unless he would pay her five hundred dollars. That he again applied to her on the 17th of *October*, shewed the deed from the master, and demanded possession, and, at the same time, gave her notice that he should apply to this Court on the 21st of *October*, for an order on her to deliver up the possession, and to pay him a reasonable compensation for the use of the premises from the 10th of *August*, with the costs of the application. That her husband, *Justus Thompson*, defendant, is now, and has been, for several years past, absent from the state. The petitioner prayed for an order pursuant to the notice so given to Mrs. *T.*

It appeared from the original bill, that the premises, consisting of a house and twenty-five acres of land, and three acres of salt meadow, lying in *Bushwick*, *Kings County*, were sold in 1804, by the plaintiff, to *Justus Thompson*, the defendant, who, pursuant to an agreement, executed a lease to the plaintiff of twelve acres and an half, for life, free of rent, and on the 6th of *May*, 1805, executed a bond and a mortgage of the whole, to the plaintiff, to secure two thousand dollars, part of the consideration money. The mort-

gage, in which Mrs. *T.* joined, was duly registered. The other defendants were subsequent judgment creditors and mortgagees. The bill charged that the bond was unpaid, and the mortgage forfeited, whereby the estate became absolute at law; and that the plaintiff had called on the defendant, *T.*, to pay the debt, or to deliver up the possession of the premises to the plaintiff, and release the equity of redemption. The bill prayed for a decree, that *T.* should pay, or be foreclosed of all equity of redemption, and surrender up all the title deeds, or that the premises be sold, and for general relief. The bill was taken *pro confesso*, against *J. Thompson* and his wife. On the coming in of the master's report, stating a balance of 3,486 dollars, and 33 cents due to the mortgagee; it was decreed, on the 15th of *June* last, that the right of the defendants, *T.* and wife, in the mortgaged premises, subject to the life estate of the plaintiff, in the northerly half of the farm, be sold, &c. and that the master execute a deed to the purchaser, &c.

*C. Baldwin*, for the petitioner, now moved for an order on the defendant, *Elizabeth T.*, in pursuance of the notice stated in the petition. He cited *Dick. Rep.* 617. 1 *Bro.* 376. 1 *Fonbl. Equ.* 31, note.

*Sampson*, contra. He cited 2 *Ch. Cas.* 244. 2 *Madd. Pr.* 360, 361. 4 *Inst.* 79. 1 *Roll. Abr.* 373. *Wyatt Pr. Ry.* 157. 205. 1 *Ch. Cases*, 91. 184. 1 *Atk.* 544. 3 *Atk.* 275. *Barton's Suit in Equ.* 210. 213. *Hind's Pr.* 609. 1 *P. Wms.* 746.

THE CHANCELLOR. This is an application, on the part of the defendant *Berry*, as a purchaser of the mortgaged premises, for an order upon the defendant *Elizabeth Thompson*, to deliver up the possession. She is the wife of *J. Thompson*, the mortgagor, and united with him in the mortgage; and she was with her husband made a party to the bill, which was filed by the plaintiff as mortgagee, to foreclose

1820.

KERSHAW
v.
THOMPSON.

*October 23d.*

*Nov. 29th.*

the equity of redemption. She and her husband ˉsuffered the bill to be taken *pro confesso*. The bill stated that she, as well as her husband, duly executed and acknowledged the mortgage ; that the debt had not been paid, by reason whereof the estate had become absolute in the plaintiff; that he had applied to the mortgagor to redeem or else to deliver up possession and release the equity of redemption; and the prayer in the bill was, that the mortgagor redeem, or be foreclosed of all equity of redemption, and that he be decreed to surrender up the title deeds, or that the land be sold ; and the bill concluded, as usual, with a prayer for general relief.

The decree was, that the right of *Thompson* and his wife be sold by a master, and that he execute a deed to the purchaser, and bring the purchase money into Court. The petition states, that *Berry*, the purchaser, gave the full value of the land, and that he showed the master's deed to the defendant, *Elizabeth Thompson*, and requested a delivery of the possession, which she refused to give, unless he would pay her 500 dollars. She has had due notice of this application, and it is resisted by her, not on the ground of any alleged title or claim on her part to the land, (for none is stated,) but on the ground that the Court has no authority to interfere with the possession, and that the purchaser under the decree ought to be driven to his ejectment at law.

I have examined this point with a disposition not to enlarge the established jurisdiction of the Court, but with an anxiety, at the same time, to afford to the suitor the adequate and perfect relief to which he may be justly entitled. It does not appear to consist with sound principle, that the Court which has exclusive authority to foreclose the equity of redemption of a mortgagor, and can call all the parties in interest before it, and decree a sale of the mortgaged premises, should not be able even to put the purchaser into possession against one of the very parties to the

suit, and who is bound by the decree. When the Court has obtained lawful jurisdiction of a case, and has investigated and decided upon its merits, it is not sufficient for the ends of justice, merely to declare the right, without affording the remedy. If it was to be understood, that after a decree and sale of mortgaged premises, the mortgagor or other party to the suit, or, perhaps, those who have been let into the possession, by the mortgagor, *pendente lite*, could withhold the possession in defiance of the authority of this Court, and compel the purchaser to resort to a Court of law, I apprehend that the delay, and expense, and inconvenience of such a course of proceeding, would greatly impair the value and diminish the results of sales under a decree. A better doctrine was laid down by Lord *Hardwicke*, in *Yates* v. *Hambly*, (2 *Atk.* 360.) when he held, on a bill to redeem a mortgage, that the plaintiff was entitled to redeem upon paying the principal, interest, and costs; that he was not obliged to bring an ejectment for the possession, but he should have a decree for it in Equity, after the mortgage was satisfied, and that it was like many other cases in that Court, where, though the party had a double remedy, he should not be put to the expense.

The distribution of power among the Courts would be injudicious, and the administration of justice exceedingly defective, and chargeable with much useless delay and expense, if it were necessary to resort, in the first instance, to a Court of equity, and, afterwards, to a Court of law, to obtain a perfect foreclosure of a mortgage. It seems to be absurd to require the assistance of two distinct and separate jurisdictions for one and the same remedy, viz: the foreclosure and possession of the forfeited pledge. But this does not, upon due examination, appear to be the case; and it may be safely laid down as a general rule, that the power to apply the remedy is coextensive with the jurisdiction over the subject matter. A bill to foreclose the equity of redemption is a suit concerning the realty, and *in rem* ; and the power

1820.

KERSHAW
v.
THOMPSON.

A bill to foreclose the equity of redemption of a mortgage is a suit *in rem*, and possession follows the decree and will be enforced by the Court.

that can dispose of the fee, must control the possession. The parties to the suit are bound by the decree; their interests and rights are concluded by it; and it would be very unfit and unreasonable, that the defendant, whose right and title has been passed upon and foreclosed by the decree, should be able to retain the possession, in despite of the Court. This is not the doctrine of the cases, nor the policy of the law.

The case of *Dove* v. *Dove*, (*Dickens*, 617. 1 *Bro*. 375. 1 *Cox*, 101. S. C.) which was before Lord *Loughborough*, and also before the Lords Commissioners, in 1783 and 1784, has settled the question as to the authority and practice of the Court.

By the decree, the estate of the testator was to be sold, and all parties were directed to join. There was nothing in the decree that the defendant, or any other person, was to deliver up possession. The tenant in possession, (and who was a party in the cause,) was a widow, and was not in under the will, but under some supposed right of her own, of jointure and dower. The estate was sold, and the purchaser required the widow to deliver him possession, but she refused. He then applied to the Court, and pursued the regular course to obtain the possession, and did obtain it by a writ of assistance. It was shown, by divers precedents, in that case, that the course of proceeding, was first to procure a decree or order (called in that case the common order,) on the defendant to deliver possession, which order is served on the defendant, accompanied with a *demand* of the possession; and there is sometimes a formal writ of execution of the order to deliver possession. An *attachment* then issues for disobeying this order, but that attachment, it seems, is only matter of form, and is not to be served. The next act is, an order for an *injunction* against the tenant to deliver possession, which issues of course, on affidavit of the previous steps, and then, on affidavit of

the service of injunction, and refusal, a *writ of assistance* to the sheriff to put the party in possession, issues, of course, on motion, without notice.

This is a case very much in point. It applies to the one before me, in every essential particular; and I cannot see why it ought not to be regarded as a just and conclusive authority on this question of jurisdiction and practice.

The forms of process mentioned in that case, are all to be found in the older books of practice; and the same course of proceeding in decrees concerning land, is declared and laid down both in the old and the modern books. (*Bohun's Cur. Cancel.* 368. 374. *Newland's Pr.* 198. Lord *Hardwicke,* in *Stribley* v. *Hawkie,* 3 *Atk.* 275. *Huguenin* v. *Baseley,* 15 *Vesey,* 180.) Lord *Hardwicke* says, in *Penn* v. *Lord Baltimore,* (1 *Vesey,* 444.) that Chancery will enforce a decree *in rem,* as to lands lying within its jurisdiction, and that it was settled as early as the time of *James* I., that it would put a party into possession in a suit concerning lands. He had previously asserted the same jurisdiction, in *Roberdeau* v. *Roys.* (1 *Atk.* 543.)

In the compilation made by *West,* in the reign of *Elizabeth,* (*West's Symbol.* part 2. 189.) it is stated, that if the decree be in a suit for lands, and the defendant detain the possession, against the process of contempt, a commission goes to the sheriff to put the plaintiff in possession; and he gives us the form of the writ. The same course of proceeding under a decree for the possession of land, is prescribed by Lord *Bacon,* in his rule No. 9.

There could be no doubt, under any of the cases, that this usual course to obtain delivery of possession, would be admitted, if it was made part of the decree, that the possession was to be delivered. That omission constitutes all the difficulty of the case. But the possession, as a consequence, is necessarily implied in a decree directing the sale of land, and a deed to the purchaser. The sale would be useless, and without meaning to the purchaser, if it was not to be accompanied

**1820.**

KERSHAW
v.
THOMPSON.

with actual possession. When the declared object of the bill is to foreclose the mortgagor's equity of redemption, and to obtain possession, or else to have the land sold to satisfy the debt, and the decree directs a sale in pursuance of the prayer of the bill, the rights of the mortgagor are necessarily concluded, and possession is part of the title, and equally within the meaning of the suit, and the spirit of the decree. A bill of foreclosure is for a specific performance of the mortgage contract, by passing the whole title of the mortgagor to the plaintiff, or to the purchaser under the decree, and it is peculiarly a suit *in rem*. The whole object of the suit is the remedy, by foreclosure, or sale of the mortgaged premises; and it is, therefore, within the reason of the cases which speak of a suit concerning the title and possession of the land itself. In the case of *Dove* v. *Dove*, already cited, there was a decree for the sale of the land, but there was no special direction in the decree for the delivery of possession to the purchaser; yet the remedy for the possession seemed to be granted as a matter of course. The doubts and deliberation in that case, rested only upon the point of regularity as to the process.

The anonymous case in 2 *Ch. Cas.* 244. was relied on by the counsel, in opposition to the motion; but it does not weaken, essentially, the doctrine which I have deduced from the other cases; and it is, besides, so briefly, and so very loosely reported, as to be scarcely deserving of any consideration.

That was the case of a mortgagee suing to have his money, or that the equity of redemption be foreclosed. Without giving us the substance or nature of the decree, the case then adds, that by " subsequent orders," possession was ordered to the mortgagee, and the heir was prosecuted for a contempt in not delivering possession; and, on examination, " he set forth a title." Lord Chancellor *Nottingham* would not discuss the title, and agreed to leave the plaintiff to such

title as he had, without amending it, and the heir was discharged from the contempt.

This case shows, that the delivery of possession was no part of the decree, but of subsequent orders, yet no objection was made on that ground, and which, indeed, is the only colourable ground of objection in the present case. It does not appear that the heir was a party to the suit and decree, and the contrary is to be presumed, since he, afterwards, set up a title, and that was the real objection to the proceeding. To add possession to the plaintiff's claim, would be amending it, or strengthening it, against the title set up by the heir, and it was very probable, even from the imperfect note of that case, that it was an act of sound discretion to leave the party to try his title by suit against the heir. That case has no analogy to this, for here is one of the mortgagors, and a party defendant to the suit, and one who suffered the bill to be taken *pro confesso*, endeavouring to extort a large sum from the purchaser, as the price of the possession, when she sets up no claim, and is justly concluded by the decree. It is so very reasonable, that the party against whom a decree has been rendered, and under which his property has been sold, should surrender up the possession to the purchaser under the authority of the decree, without the delay and expense of a new suit, that *Buller*, J. was inclined to think, in *Taylor* v. *Cole*, (3 *Term Rep*. 298.) that the sheriff, even on a *fi. fa.*, might turn the debtor himself out of possession, in favour of the purchaser of the farm; and Mr. J. *Livingston*, (1 *Johns. Rep*. 44.) in a case in our Supreme Court, intimated the same opinion.

As to the mode of proceeding in the present case, it is proper to grant an order on *Elizabeth Thompson*, the defendant in possession, to deliver the possession of the premises to *Berry*, the purchaser, according to the intent and meaning of the decree directing a sale. If it had been specially expressed in the decree itself, on directing that the

*Form of proceeding to obtain possession of mortgaged premises under a decree.*

Master should execute a deed to the purchaser, *that the defendants who may be in possession, or any person who has come in under them, or either of them, pendente lite, deliver possession of the mortgaged premises to such purchaser, on production of the deed,* then a formal writ of execution of the decretal order to deliver possession, would have been proper. But as this effect and intention of the decree, though necessarily resulting from it, and clearly implied, is left to inference, as it was in the case of *Dove* v. *Dove,* the *order* to deliver, and a service of it, must supply the place of the more formal process. The attachment on the disobedience to the order is a useless process, since it is not to be served, and it clearly may be dispensed with. The course of proceeding, in this case, is the order, then the injunction, and then the writ of assistance.

It was, thereupon, " ordered, that the said *Elizabeth Thompson,* one of the defendants in this cause, on being served with a certified copy of this order, forthwith deliver up to the said *Jacob Berry,* the mortgaged premises mentioned and described in the pleadings and decree in this cause, and in the deed executed by the Master to the said *Jacob Berry,* in pursuance of the said decree ; and upon such service, accompanied with a demand of the said possession, and a refusal thereof, the said *Jacob Berry* may apply for an injunction according to the course of the Court in such cases."