Russell Mills *v.* County Commissioners of Plymouth.

RUSSELL MILLS *vs.* COUNTY COMMISSIONERS OF PLYMOUTH.

The county commissioners have no authority to issue a warrant of distress to compel the payment by the town of Plymouth of damages assessed for the taking of land, water or water power for the construction of water works under *St.* 1855, *c.* 61.

DEWEY, J. The Russell Mills ask this court for a writ of mandamus to the county commissioners of the county of Plymouth to issue a warrant of distress against the inhabitants of the town of Plymouth for the amount of damages awarded by the commissioners in their favor by the proceedings recited in the preceding case, *ante,* 341. The general authority to issue such writ in all proper cases is not denied.

Several objections are urged in behalf of the respondents

against the exercise of this power in the present case. Some of these are answered by the opinion of the court pronounced in the previous case.

The objection most strongly urged, however, and which is certainly of vital importance, is that the county commissioners had no power to issue a warrant of distress to enforce their assessment of damages. It is said that there is no provision of law to authorize it. If this be so, of course no mandamus should issue. The county commissioners are a tribunal of limited powers, and not to be confounded with our common law courts. Their powers are to be found in the statutes giving them jurisdiction of the various classes of cases committed to them. Their jurisdiction to act upon the petition of the Russell Mills, and assess damages for the taking of their water power by the agents of the town of Plymouth, is derived from the. *St.* of 1855, *c.* 61, providing that if the price to be paid by the town for the water power thus taken " cannot be fixed by agreement with the owners thereof, the same shall be estimated by the county commissioners in the manner provided in the twenty-fourth and thirty-ninth chapters of the Revised Statutes." The provisions of the *St.* of 1854, *c.* 351, are not applicable to the assessment of damages of the present character. We are at once referred back to the provisions of the Rev. Sts. *cc.* 24, 39, for the power vested in the commissioners by those chapters.

The case of enforcing the payment of damages for taking land for a highway is not provided for in any such mode as by warrant of distress by the commissioners, for the obvious reason that such damages are paid by the county, and their simple orders on the county treasurer are supposed to be sufficient to secure prompt payment of all damages awarded by them, payable by the county. Rev. Sts. *c.* 24, § 42. Another class of cases, the neglect of a town to make a road when required by the county commissioners, the expenses of which are chargeable upon the towns in which the road is situated, is provided for by §§ 44, 45, and authority is given to issue warrants of distress against such town upon failure to make repairs, or to pay the sums expended thereon.

The 39th chapter of the Revised Statutes embraces the cases of turnpikes and railroads. As to turnpikes, the corporation is by § 3 made liable to pay all damages occasioned by laying out its turnpike road, and by § 7 no entry is to be made upon the land taken until the damages are paid. As to damages for the original taking, there is no provision authorizing the commissioners to issue a warrant of distress. On laying out turnpikes as highways, there is a provision authorizing the commissioners to order towns to refund a portion of the sums paid by the county as damages, and, upon their neglect to refund, to issue process to enforce payment thereof. §§ 19, 20. As to railroads, the provision is that the " damages shall be estimated by the commissioners in the manner provided in the case of laying out highways." § 56. By § 61, the owner of the land may require security for the payment of his damages, and in such case the railroad corporation are not to enter upon the land until such security is given. There is no power directly given to county commissioners to issue a warrant of distress for such damages. This statute, like that in the case before us, provides that the " damages shall be estimated by the commissioners." But neither provides that the payment may be enforced by warrant of distress. Nor was it understood that such authority existed. That power was first conferred by *St.* 1847, *c.* 259.

Neither *c.* 24 nor *c.* 39 of the Rev. Sts. authorizes the commissioners to issue a warrant of distress for damages estimated by them for land originally taken by a location of a highway, turnpike or railroad. Hence neither of these statutes authorizes the issuing of the writ of mandamus prayed for. The enacting of the *St.* of 1847, *c.* 259, giving the remedy by warrant of distress, in case of non-payment of damages for land taken by a railroad, tends strongly to show that no such power was supposed to be previously vested in the county commissioners.

This seems to be hardly controverted ; but it is contended that a proper construction of the *St.* of 1855, *c.* 61, will embrace the *St.* of 1847, *c.* 259, § 3, as a part of *c.* 39 of the Rev. Sts. The *St.* of 1847 does not purport on its face to be an act in

amendment of or supplementary to that chapter, but has reference to various other statutes. Section 3, providing for a warrant of distress against a railroad for non-payment of damages for land taken, introduces a new provision, having its force by virtue of this particular statute, but it cannot be said to incorporate this provision as a part of *c.* 39 of the Rev. Sts.

In confirmation of the view we have taken of the want of any authority to issue a warrant of distress for taking land or water power, to be found in the Rev. Sts., *cc.* 24, 39, we may refer to several special acts creating aqueduct corporations. *Sts.* 1848, *c.* 303; 1850, *c.* 198; 1851, *c.* 213; 1853, *c.* 331. Where these acts confer the power to take land or divert water, they will be found to contain the provision that the corporation shall pay all damages, and that the sum shall be estimated and allowed by the county commissioners as in the case of highways, that is, under the Rev. Sts. *c.* 24. But it was not supposed that this provision would authorize the commissioners to issue warrants of distress against such aqueduct corporations. To give this power to the county commissioners, further legislation was deemed necessary; and the *St.* of 1851, *c.* 289, was enacted, providing that "whenever, upon the application of any person who may have sustained injury from the operations of any aqueduct corporation, in his lands or by the diversion of water, damages shall have been assessed against such corporation by county commissioners, the commissioners may issue warrants of distress to compel payment of such damages, with interest and costs, in the same manner and with the same limitation as they may now do in cases of railroad corporations."

From the fact of the enactment of the *Sts.* of 1847, *c.* 259, § 3, and 1851, *c.* 289, providing by the first for the case of railroads, and in the latter for the case of aqueduct corporations, we think it is to be necessarily inferred that neither *c.* 24 nor *c.* 39 of the Rev. Sts. authorized a warrant of distress to be issued by the commissioners for damages for the original taking of land or water power.

We have already stated that the power found in the *St.* of 1847, *c.* 259, will not avail the petitioners in the present case.

It only remains to be considered whether the *St.* of 1851, *c.* 289, applies to a case like the present. In terms it certainly does not. The town of Plymouth was not created " an aqueduct corporation." Many such will be found in the special laws, each being an incorporation of sundry individuals, for the special and limited purpose of procuring water and distributing the same, as a joint stock company with the benefits of a corporate name. The present case is more analogous to that of the *St.* of 1846, *c.* 167, entitled " an act for supplying the city of Boston with pure water." The difference between the two statutes is very obvious in this respect; that the act in relation to the city of Boston is prepared with great care, and well adapted to secure fully the rights of all parties, by requiring a description of the lands or other rights taken for the aqueduct to be filed in the proper office, and distinctly providing as to the mode of proceeding to recover the damages any party may sustain. In these respects, this act in relation to the town of Plymouth is certainly defective. But we apprehend that in neither case does the statute create " an aqueduct corporation " in the sense of the *St.* of 1851, *c.* 289. In this view of the case, there is no provision applicable to the present case in that statute.

We are then referred back to *cc.* 24 and 39 of the Rev. Sts. for the authority for issuing a warrant of distress, and the power must be found there; and this is so, assuming that the *St.* of 1855, *c.* 61, gives all the authority in this case, that is given in case of damages in locating highways or railroads. The language of this act ought not perhaps to be overlooked, it being merely " that the same shall be estimated by the county commissioners, in the manner provided in the twenty-fourth and thirty-ninth chapters of the Revised Statutes." It is not said that the payment may be enforced under the provisions of those statutes, but that the price to be paid shall be estimated by the county commissioners in the manner provided in the Rev. Sts. *cc.* 24, 39.

Supposing an assessment of damages has been duly made, the remedy of the Russell Mills is not therefore by warrant of

distress to be issued by the county commissioners, but by an action of contract. Such was the law as held in *Bigelow* v. *Cambridge & Concord Turnpike*, 7 Mass. 202, where there was no authority for a want of distress or other specific remedy. In *Jeffrey* v. *Blue Hill Turnpike*, 10 Mass. 368, the court say " The statute by which the defendants were made a corporation contains a provision ' that the corporation shall be liable to pay all damages which may arise to any person by taking his land for the road.' The proceedings to inquire of damages and to ascertain the compensation are prescribed; but nothing is said of the legal remedy by which payment is to be enforced against the corporation. This is a case therefore where the common law applies the necessary remedy." This view of the subject precisely meets the present case, and shows that an action of contract is a proper remedy to recover damages that have been estimated by the county commissioners when no express provision for enforcing payment is found in the statute.

The case of *Gedney* v. *Tewksbury*, 3 Mass. 307, was put upon the ground that there was a particular and specific remedy given by *St.* 1786, *c.* 67. The same is true of *Commonwealth* v. *Boston & Maine Railroad*, 3 Cush. 57. See *St.* 1847, *c.* 259, § 3, above cited.                    *Mandamus refused.*

*E. Ames & W. Whiting*, for the petitioners, cited Tapping on Mandamus, 19, 119, 172; *Rex* v. *Robinson*, 2 Bur. 799, & cases cited; *The King* v. *Justices of Middlesex*, 2 Keny. 163; *The King* v. *Justices of Hants*, 1 B. & Ad. 654; *The King* v. *Justices of Buckinghamshire*, 3 Nev. & Man. 68; *Kershaw* v. *Thompson*, 4 Johns. Ch. 612, 613; *Ludlow* v. *Lansing*, Hopk. Ch. 232; *Tremont School District* v. *Clark*, 33 Maine, 482; *Baker* v. *Johnson*, 41 Maine, 15; *Gedney* v. *Tewksbury*, 3 Mass. 309, 310; *Kent* v. *County Commissioners*, 10 Pick. 521; *Commonwealth* v. *Boston & Maine Railroad*, 3 Cush. 57, 58; *Morse, petitioner*, 18 Pick. 443; 5 Dane Ab. 28; Rev. Sts. *c.* 81, § 5; *c.* 39, §§ 56, 57; *Sts.* 1847, *c.* 259, § 3; 1855, *c.* 61, § 1; Dwarris on Sts. (2d ed.) 569.

*B. F. Thomas & C. G. Davis*, for the respondents.