JACOB SCHENCK vs. ELIAS H. CONOVER.

After sale on foreclosure the court will compel the mortgagor, or any person who has come in possession under him pending the suit, or whose title is not superior to his, to deliver up the possession of the premises, and will not drive the purchaser to an action of ejectment.

And this assistance will be extended to a stranger to the record purchasing at such sale as well as to the mortgagee.

The mode of proceeding has been as follows, viz, 1, a demand of possession by the purchaser of the tenant in possession accompanied by an exhibit of the deed from the sheriff or master; 2, order to deliver possession; 3, injunction; and 4, writ of assistance.

The exercise of the power rests in the sound discretion of the court. It will never be exercised in a case of doubt, nor under color of its exercise will a question of legal title be tried or decided.

This was a motion for an order on defendant to deliver possession of lands sold on foreclosure.

*Richey,* for motion.

*W. Halsted,* contra.

THE CHANCELLOR. A decree of foreclosure and for the sale of the mortgaged premises having been made in this cause, a writ of *fieri facias* issued to the sheriff of Hunterdon, by virtue of which the premises were sold and conveyed to John A. Carroll. Carroll having received his title, and possession of the premises having been demanded and refused, now applies to the court for an order upon the defendant to deliver possession. The order is asked for as the foundation of an application for a writ of injunction and of assistance.

An affidavit of Conover was by consent read upon the hearing; but there is nothing in the facts stated in the affidavit which is deemed material to the question in controversy.

The objection to the application is, that the court have no power to make the order applied for, and that it is not warranted by the practice of this court.

The practice of putting the purchaser into possession of premises purchased under the decree of this court is of recent origin. The earliest case was that of *Grant* v. *Quinan,* in 1853. The case was not contested. In 1854, a similar order was made in the case of *Kennedy* v. *Vreeland.* This case was contested, and an appeal was taken from the order of the Chancellor. The power of the court was not seriously contested, the appellant's point being that " the remedy (unusual in this state) by writ of assistance is not properly grantable in this case, because proceedings are pending in the Court of Chancery to set aside the petitioner's title for good and sufficient causes." The order of the Chancellor was unanimously affirmed at March term, 1855. Since then similar orders have been

T*

of frequent occurrence. It might, therefore, be deemed a sufficient answer to the objection to say that the order asked is in accordance with the established practice of this court, and that the practice has been sanctioned by the decision of the court in the last resort.

But inasmuch as the propriety of the practice and the power of the court to adopt it are now drawn directly in question, and as it has not the sanction of long established usage, it may be well to examine both its foundation and its policy.

In *Roberdeau* v. *Rous*, 1 *Atk.* 543, Lord Hardwicke said, the delivery of the possession of lands may be enforced in *personam*, which was the ordinary way; but the writ of assistance to put persons in possession as by way of injunction is of more modern date. This was in 1738.

In the later case of *Penn* v. *Lord Baltimore*, 1 *Vesey sen.* 444, Lord Hardwicke said, "the practice of putting a party into possession in a suit concerning lands within the jurisdiction of the court was first begun and settled in the reign of James I., and has ever since been done by injunction or writ of assistance to the sheriff."

This statement of Lord Hardwicke as to the origin of the practice, says Mr. Eden, is clearly a mistake, for many precedents for injunctions to deliver possession after a decree and a commission or writ of assistance to the sheriff are in the printed reports as early as the reign of queen Elizabeth; and in a manuscript book of orders (which appears to have been taken from the registrar's books in the Hargrave collection), there are a great many precedents of injunctions to deliver possession of lands after a decree, in the time of Henry VIII., Edward VI., and Mary. *Eden on Injunctions* 261, *Waterman's ed., vol. 2, p.* 425.

In *Dove* v. *Dove*, (before the lords commissioners in 1783) by the decree, the estate of the testator was to be sold. The defendant, the widow, who had got into possession under some claim of jointure or dower, was di-

rected to account. The estate was sold, and the purchaser applied to the widow to deliver possession, which she refused. He then applied to the court, and obtained possession by an order, injunction, and writ of assistance. *Dickens* 617; 1 *Bro. Ch.* 375; 1 *Cox* 101, *S. C.*

In the report of this case by Dickens, the course of proceeding to obtain possession by injunction and the writ of assistance are fully stated.

The practice was adopted also in *Stribley* v. *Hawkie*, 3 *Atk.* 275, and in *Huguenin* v. *Bazeley*, 15 *Vesey* 180.

The general result of the cases is, that where lands are within the jurisdiction of the court, and the defendant refuses to perform the decree by giving the plaintiff possession, the court will enforce its decree by the writ of assistance. *Wyatt's Prac. Reg.* 297, (*London ed.* 1800); 2 *Mad. Chan. Pr.* 469, (*ed.* 1822); 1 *Fonb. Eq.* 32, *note q;* 1 *Newland's Ch. Prac.* 390; 1 *Smith's Ch. Prac.* 447.

In *Garretson* v. *Cole*, 1 *Harris & John.* 387, Chancellor Hanson said, an injunction for possession is not a new thing in a court of equity. It has long been used in England, and it would disgrace our laws and administration of justice, if after a title to land had been established by the adjudication of a court, there could be no way of obtaining possession but after obtaining judgment in ejectment.

In *Buffum's case*, 13 *New Hamps.* 14, Ch. Just. Parker, in delivering the opinion of the court, says, " the decree in this case may be regarded as establishing an equitable title in the complainant, so that without the execution of any deed by the defendant in pursuance of it, the court would put the plaintiff in possession by writ of assistance, if necessary." See, also, *Devaucene* v. *Devaucene,* 1 *Edw.* 272.

These cases clearly show the long established and familiar practice of the Court of Chancery, wherever the conveyance of real estate is decreed, to compel the defendant to surrender the possession to the plaintiff: in

other words, a court of equity will enforce its own decree, as between the parties, without compelling a resort to an action at law.

The same practice is adopted under sales before a master in the English Court of Chancery. 2 *Smith's Ch. Pr.* 213. The application, however, is made not by the purchaser, but by the solicitor of the vendor at the instance of the purchaser.

So on a bill by a mortgagor to redeem the mortgaged premises the court will order the defendant to deliver up possession to the plaintiff without putting the plaintiff to his ejectment. *Yates* v. *Hambly*, 2 *Atk.* 360 ; *Seaton's Decrees* 146.

In a strict foreclosure the practice is otherwise. In such case the court does not direct the mortgagor to deliver up the possession of the mortgaged premises to the plaintiff, but leaves the plaintiff to his ejectment. *Sutton* v. *Stone*, 2 *Atk.* 101 ; *Seaton's Decrees* 140.

The reason for this distinction in practice seems to be, that on a bill to redeem there is a decree for a reconveyance by the mortgagee to the mortgagor. The mortgagor acquires title under the decree of the court, and the court will perfect his title and give him the benefit of the decree by putting him in possession ; whereas under a bill for foreclosure the complainant has the legal title, and only asks that the equity of redemption be foreclosed. He acquires no title under the decree of the court. No conveyance is ordered, and no delivery of possession is necessary to give effect to the decree.

It becomes, then, a mere question of practice whether a court of equity will, in the exercise of its undoubted power, give full effect to its decree for the sale and conveyance of mortgaged premises by putting the purchaser into possession. The subject was fully examined and the practice adopted by Chancellor Kent in *Kershaw* v. *T hompson*, 4 *Johns. Ch.* 609. In a luminous opinion, in which he examines both the power of the court to adopt the

practice and the policy of its adoption, he says, " The distribution of power among the courts would be injudicious, and the administration of justice exceedingly defective and chargeable with much useless delay and expense, if it were necessary to resort in the first instance to a court of equity, and afterwards to a court of law to obtain a perfect foreclosure of a mortgage. It seems to be absurd to require the assistance of two distinct and separate jurisdictions for one and the same remedy, *viz.* the foreclosure and possession of the forfeited pledge. But this does not, upon due examination, appear to be the case; and it may be safely laid down, as a general rule, that the power to apply the remedy is coextensive with the jurisdiction over the subject matter. A bill to foreclose the equity of redemption is a suit concerning the realty and *in rem,* and the power that can dispose of the fee must control the possession. The parties to the suit are bound by the decree, their interests and rights are concluded by it, and it would be very unfit and unreasonable that the defendant, whose right and title has been passed upon and foreclosed by the decree, should be able to retain the possession in despite of the court. This is not the doctrine of the cases, not the policy of the law."

This decision has been approved, and the practice adopted in numerous cases. *Ludlow* v. *Lansing, Hopkins* 231; *Valentine* v. *Teller, Hopkins* 422; *Vanhook* v. *Throckmorton,* 8 *Paige* 33; *Dorsey* v. *Campbell,* 1 *Bland* 363; *McKomb* v. *Kankey,* 1 *Bland* 363, *note c; Aldrich* v. *Sharp,* 3 *Scammon* 261; *Hart* v. *Lindsay, Walker's Ch.* 72; *Benhard* v. *Darrow, Ibid* 519; *Commonwealth* v. *Ragsdale,* 2 *Hen. & Mun.* 8.

These cases show that at this day, upon a sale under a decree of a Court of Chancery, the delivery of possession to the purchaser by injunction and writ of assistance is well settled and of right when the possessor does not claim to hold by title paramount to the parties.

The case has hitherto been considered solely in reference

to the general powers of the court without regard to any statutory provision, but the practice is certainly warranted, if not expressly authorized by our statute. *Nix. Dig.* 95, § 63; *Rev. Laws* 1820, 702, § 4.

By a clause of that section it is enacted, that the complainant having obtained a decree, it shall be lawful for the said court . . . . "to cause by injunction the possession of the effects and estate demanded by the bill, and whereof the possession or *a sale* is decreed, to be delivered to the complainant, or otherwise according to such decree and as the nature of the case may require."

The Maryland statute of 1785 is identical with our own. In *McKomb* v. *Kankey*, 1 *Bland* 363, *note c*, decided in 1807, possession was delivered to a purchaser at a sheriff's sale of mortgaged premises against the lessee of the mortgagor. The Chancellor said, "the general power of the Court of Chancery to issue an injunction directing possession to be delivered is sanctioned by the practice in England and by our acts of assembly. The decree for possession and injunction is a process demandable of right as much as an attachment or other execution, and ought not to be refused when the power is considered to exist. An application for possession in such case is founded on the general powers of the court and *on the act of* 1785."

The proper mode of proceeding where the delivery of possession is not included in the decree, as settled in *Kershaw* v. *Thompson*, and as hitherto adopted in this court, is a demand of possession by the purchaser of the tenant in possession accompanied by an exhibit of the deed from the sheriff or master, order to deliver possession, injunction, and writ of assistance. The preliminary orders are made upon notice and affidavits, the last writ issues of course and without notice.*    4 *Johns. Ch.* 610;

---

\* In a more recent case it has been held that the injunction should be dispensed with, and that the writ of assistance should issue in the first instance, upon proof of the service of the order to deliver possession, of demand of possession, and refusal to comply therewith. Notice of the application is necessary.

*Barbour's Chan. Prac.* 441. See the Forms, *Hoffman's Master,* 393 ; *Seaton's Forms* 424, 425.

In *Valentine* v. *Teller, Hopkins* 422, it was held that the writ of assistance was the first and only process necessary for giving possession, and that the injunction was not necessary. And by the present English practice, regulated by 1 *Will.* 4, *c.* 36, upon proof of the service of the order for the delivery of possession, of demand of possession, and of refusal to comply therewith, the writ of assistance issues in the first instance, the writ of injunction as well as the writ of attachment used in the ancient practice being dispensed with. 2 *Daniels' Ch. Pr.* 1280.

The injunction is in fact but a repetition of the order of the court to deliver possession, and it would seem that it might be advantageously dispensed with.

The cases cited meet all the objections that were urged upon the argument to granting the relief asked for in this case. They show that the writ of assistance will issue as well when a special order is made for the delivery of possession after a sale, as when the direction is included in the decree; that it will be granted at the instance of the *purchaser* after a sale as well as on the application of the complainant; and that it may be made not only as against the defendant, but against any party in possession under him, or by title not superior to his. It is scarcely necessary to add, that the exercise of the power rests in the sound discretion of the court. It will never be exercised in a case of doubt, nor under color of its exercise will a question of legal title be tried or decided. With these limitations of its exercise, I believe that the practice which has been adopted will be found both safe and salutary. The practice of delivering possession of mortgaged premises to the purchaser under a sale made by the authority of this court is, as has been said, of recent adoption in this state. It is not, however, the exercise of a new power. It is but the more extended application of a familiar power which has been exercised in the Court of Chancery for centuries.