COLD SPRING LIGHT, HEAT AND POWER COMPANY, Appellant, *v.* CHARLES M. SELLECK et al., as Trustees of the Village of Cold Spring, Respondents.   (Actions 1 and 2.)

(Submitted May 20, 1931; decided June 2, 1931.)

452

[redacted]

*Allen S. Hubbard* for appellant. Plaintiff was not in default under the judgment when defendants removed its poles and wires. (*White* v. *Klinken,* 16 Abb. Pr. 109; *Gersman* v. *Levy,* 58 Misc. Rep. 174; *Sixth Avenue R. R. Co.* v. *Gilbert Elevated R. R. Co.,* 71 N. Y. 430; *Danziger* v. *Gottlieb,* 156 App. Div. 571; *Jewelers' Mer. Agency* v. *Rothschild,* 155 N. Y. 255; *Genet* v. *President, etc., D. & H. C. Co.,* 113 N. Y. 472; *Matter of Meyer,* 209 N. Y. 59; *Laney* v. *Rochester R. R. Co.,* 81 Hun, 346; *Mills* v. *Leland,* 156 App. Div. 597; *Clute* v. *Superior Court,* 155 Cal. 15; *McCoy* v. *Chicago, M. & St. P. Ry. Co.,* 192 Iowa, 448; *Green Bay & M. Canal Co.* v. *Norrie,* 128 Fed. Rep. 896; *Allen* v. *Fink,* 211 App. Div. 411; *Ferry* v. *Bank of Central New York,* 9 Abb. Pr. 100; *Petrie* v. *Fitzgerald,* 2 Abb. Pr. [N. S.] 354; *Schwabe* v. *Herzog,* 157 App. Div. 672; *Morgan* v. *Williams,* 85 Fla. 219; *Pickel* v. *Pickel,* 251 Mo. 197.) Whether the plaintiff was in default under the judgment could only be determined in contempt proceedings brought by defendants to enforce the judgment as prescribed by section 505 of the Civil Practice Act. (*Mills* v. *Leland,* 156 App. Div. 597; *City of Syracuse* v. *Hogan,* 234 N. Y. 457; *Johnson* v. *Purpura,* 208 App. Div. 505; *Heughes* v. *Galusha Stove Co.,* 122 App. Div. 118; *Cochrane* v. *Ingersoll,* 73 N. Y. 613; *Fischer* v. *Raab,* 81 N. Y. 235; *Moffatt* v. *Herman,* 116 N. Y. 131; *Socialistic Co-op. Pub. Assn.* v. *Kuhn,* 164 N. Y. 473; *Sagehomme* v. *Pugh & Co.,* 53 Misc. Rep. 41; *Knickerbocker Trust Co.* v. *O., C. & R. S. Ry. Co.,* 201 N. Y. 179.) Defendants were not authorized to remove plaintiff's poles and wires at plaintiff's expense while plaintiff's motion for reargument was pending in

the Court of Appeals. (*New York Electric Lines Co.* v. *Empire City Subway Co.*, 235 N. Y. 180; *Merrimack River Savings Bank* v. *Clay Center*, 219 U. S. 527; *People ex rel. Platt* v. *Rice*, 144 N. Y. 249.)

*M. S. Lockhart* and *J. Gordon Flannery* for respondents. Plaintiff was in default when defendants removed plaintiff's poles and wires. (*Danziger* v. *Gottlieb*, 156 App. Div. 571; *Sixth Ave. R. R. Co.* v. *Gilbert El. R. R. Co.*, 71 N. Y. 430; *Genet* v. *President, etc., D. & H. C. Co.*, 113 N. Y. 472; *Allen* v. *Fink*, 211 App. Div. 411; *Ferry* v. *Bank of New York*, 9 Abb. Pr. 100; *Petrie* v. *Fitzgerald*, 2 Abb. Pr. [N. S.] 354; *Schwabe* v. *Hertzog*, 157 App. Div. 672; *Village of Stillwater* v. *Hudson Valley Ry. Co.*, 255 N. Y. 144; *Rudiger* v. *Coleman*, 228 N. Y. 225; *Mills* v. *Leland*, 156 App. Div. 597.)

CRANE, J. The Cold Spring Light, Heat and Power Company served the village of Cold Spring with electric light from 1899 until December, 1926, at which time the village trustees passed an ordinance ordering the company to forthwith remove its poles and wires from the village streets. Action was thereupon brought to enjoin the enforcement of the ordinance, the trustees by counterclaim asking a mandatory injunction requiring the plaintiff to remove its property. After a trial, Mr. Justice SEEGER dismissed the complaint, the judgment reading as follows:

" Further Ordered, Adjudged and Decreed that the plaintiff be and it hereby is restrained and enjoined from maintaining its poles, wires and other property in, over or upon the streets, highways or public places in the Village of Cold Spring; and it is

" Further Ordered, Adjudged and Decreed that the plaintiff proceed forthwith to remove its poles, wires and other property from the streets, highways and public places in the Village of Cold Spring, and that the said

removal be completed within three months from the entry of this judgment and service of a certified copy thereof on the plaintiff or its attorneys, and in default thereof that the defendants be and they hereby are permitted to remove said poles, wires and other property at the cost of the plaintiff; * * * "

There were two actions consolidated into one.

An appeal was taken to the Appellate Division, and on its judgment of affirmance a motion was made for leave to appeal to this court, which was denied on November 27, 1928. Up to that time execution of the judgment had been stayed by order of the courts. The first stay was given by Mr. Justice SEEGER at the same time that he rendered judgment. It read: " Ordered that all proceedings on the part of the defendants for the enforcement of the judgment to be entered herein contemporaneously with this order be and they hereby are stayed until the hearing and determination of the appeal to the Appellate Division to be taken by the plaintiff from said judgment." The stay further provided that it did not authorize the plaintiff to erect new poles or extend its distribution of transmission lines without the consent of the village. Continuing, the stay, which was quite formal, further ordered: " that such stay shall include the taking of any action by the defendants and all persons acting in their behalf under the resolution passed by the defendants on December 29, 1926, requiring or purporting to require the plaintiff to remove its poles or wires or other property from the streets, highways or public places of the village of Cold Spring." Provision was further made for application to vacate the stay in case of any delay in prosecuting the appeal.

After the affirmance of the judgment by the Appellate Division the stay was continued by that court pending application for leave to appeal to the Court of Appeals. It virtually followed the wording of the stay granted by the trial justice. Immediately after the denial of the motion for leave to appeal by this court application was

made for a reargument, which was denied on January 7, 1929. In the meantime, however, and without any notice to the plaintiff, the defendants cut down the poles and wires and removed them from the streets of the village. This was done in a little over a week after the denial of the motion for leave to appeal on November 27, 1928, and before the hearing of the application for reargument. The stay having expired on November 27, 1928, it was and is the contention of the village trustees that the three months allowed by the judgment of Mr. Justice SEEGER ran from the date of that judgment, although stayed, and had expired long before the appeal had been heard in the Appellate Division. This being so, the trustees insist they had the right to remove the poles at the expense of the plaintiff immediately upon the denial of the motion for leave to appeal by this court and the termination of the stay. This has been the view taken by the lower courts on this application and motion to charge up in the form of a judgment against the plaintiff the costs of the removal, amounting to $1,534.94. By this interpretation of the stays the plaintiff, in appealing, was penalized by losing all the benefits of the three months' provision in the judgment; in other words, the mere fact of appeal deprived the plaintiff of the benefit of a very material part of that judgment. This cannot be.

By the judgment of Mr. Justice SEEGER, the plaintiff was given three months within which to remove its poles; it was to proceed forthwith and complete the removal within three months from the entry of judgment. Only after the default of the plaintiff in complying with these requirements did the village have the right to remove the poles at the expense of the plaintiff. Ordinarily a municipal corporation has the right to remove nuisances and incumbrances and collect the cost of the removal in an action brought for that purpose from the person responsible for their existence. This is not such a case, as the rights of the parties upon the counterclaim of the trustees

were adjusted and fixed by the judgment. The plaintiff was directed to remove its poles and wires and given an opportunity to do so at its own expense. The right of the village to act was suspended for a period of three months while the plaintiff was doing this work. After the expiration of that time the village could do the work and charge the expense to the plaintiff. No necessity existed for the defendants to proceed against the plaintiff to punish it for contempt for a failure to comply with the judgment as prescribed by section 505 of the Civil Practice Act. After the plaintiff had defaulted and the defendants had removed the poles, they could have moved upon affidavits before the court at Special Term to open the judgment and to enter at the foot of the decree a judgment against the plaintiff for the cost, and allow execution thereon. Courts of equity undoubtedly have power to make such orders as may be necessary to carry out and give effect to their decrees. Where no change or modification is sought and further direction is necessary to carry out provisions of the decree and make them effective, a motion supported by affidavits setting forth the facts is ordinarily sufficient to obtain a further direction in the judgment. (4 Pomeroy Equity Jurisprudence [3d ed.], § 1317; *Clark* v. *Hall,* 7 Paige Ch. 382; *Sprague* v. *Jones & Graham,* 9 Paige Ch. 395; *Kershaw* v. *Thompson,* 4 Johns. Ch. 609; *Salt Lake City* v. *Utah & Salt Lake Canal Co.,* 43 Utah, 591, 603.)

The defendants' application to the Supreme Court for judgment in the amount of their expenditures, while not taking the usual form, amounted in effect to the same thing. The error is not in the form of the application but in granting it upon the merits. The defendants are not entitled to any judgment. They took upon themselves to remove the poles and wires without giving the plaintiff a reasonable opportunity to do so, as required by the judgment. They are not entitled to reimbursement. Even if we consider the judgment as one directing the

plaintiff to proceed immediately after the stay to remove its poles, that is, to act without unnecessary delay, the defendants at least were obliged to give the plaintiff a reasonable time in which to proceed. Possibly the plaintiff could not wait after the expiration of the stay until near the end of the three months exercising the privileges in the street without making some attempt to comply with the judgment, but we are not confronted with any such situation here, as the village trustees have acted upon the assumption and have assumed the position that the privilege of the plaintiff to remove its own poles at its own expense had expired long before the stay had terminated. The stay prevented the trustees from acting but did not stay the plaintiff from the requirement to remove the poles at once. So the trustees said and now repeat. Possibly they have confused the effect of a stay in a case like this with those which operate upon a judgment granting a prohibitory injunction. Thus, if the plaintiff had sought to remove its wires and poles and the judgment had *restrained* it from so doing, a stay of that judgment would not have suspended its operation as a prohibition so as to permit the plaintiff to destroy the *res* or remove the poles, pending appeal. Such are the cases of *Sixth Avenue R. R. Co.* v. *Gilbert Elevated R. R. Co.* (71 N. Y. 430); *Danziger* v. *Gottlieb* (156 App. Div. 571); *Genet* v. *President, etc., of D. & H. C. Co.* (113 N. Y. 472); *Matter of Meyer* (209 N. Y. 59, p. 68); *Green Bay & M. Canal Co.* v. *Norrie* (128 Fed. Rep. 896); *Clute* v. *Superior Court* (155 Cal. 15); 2 Ruling Case Law (§ 97).

The stay in this case operated upon a different kind of judgment. The plaintiff had been *directed* to remove its poles, but action was suspended by the stay until final determination of the plaintiff's rights on appeal. One judgment is prohibitive, the other mandatory. Very unreasonable would it be to insist that the plaintiff destroy the very thing it was appealing to maintain. A reversal would cause confusion.

The order of the Appellate Division and that of the Special Term should be reversed, and the motion denied, with costs in all courts.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Orders reversed, etc.