GEORGE F. HARDING

*v.*

JOHN V. LE MOYNE *et al.*

*Filed at Ottawa May 15, 1885.*

1. ADMINISTRATION OF ESTATES—*lands of an estate—powers and duties of the administrator in respect thereto.* An administrator takes no interest in or to the realty of his intestate. In no event can he take anything more than a mere power, and in the absence of an insufficiency of personal assets to pay debts, he has nothing whatever to do with it.

2. SAME—*sale of land to pay debts—prerequisites to the right.* Under the act of 1857, it is essential to the right of an administrator to apply for an order to sell real estate to pay debts, and to the jurisdiction of the court to grant such order, that it shall be made to appear by the petition that the personal estate of the testator or intestate is insufficient to pay the just debts against his or her estate, and that there be real estate to which the testator or intestate had "claim or title," and that the executor or administrator has made a just and true account of the personal estate and debts of the deceased, to the proper county court. Unless these jurisdictional facts appear on the face of the petition, the court has no power to make any order in the premises.

3. SAME—*of the character of title required, in order that the land may be sold.* On an application by an administrator for leave to sell land to pay

debts and costs of administration, it is not material whether the deceased had the better title to the land sought to be sold or not, or, indeed, whether he had any title at all. It will be sufficient if the deceased, at his. death, had a *bona fide* claim of title.

4. Same—*claim of title adversely—whether it should be interposed, and for what purpose.* In a proceeding by an administrator for leave to sell land to pay debts, the court, exercising but a mere statutory authority, has no jurisdiction to settle and determine conflicting titles to the land, or to remove clouds upon title. If the paramount owner of the land is made a defendant, it would doubtless be his duty to assert his rights to the same in his answer,—not for the purpose of forming an issue to be tried in that proceeding, but for the purpose of giving notice of his rights, and thus prevent an estoppel *in pais.*

5. Same—*of defences generally, to application to sell land to pay debts—and in what manner interposed.* The procedure upon appearance of the defendants being as in chancery, if the petition fails to state all the facts necessary to give the court jurisdiction, the defendants may demur to the same, or move in arrest, or treat the whole proceeding as a nullity. If the petition is good on its face, but in fact is untrue, an answer would be necessary, which may be a simple traverse of the facts alleged, or the answer may set up any special circumstances showing that the debts or claims for the payment of which the land is sought to be sold, are not *bona fide,* or legally binding on the estate or heirs.

6. Same—*of the decree of sale—of its requisites, and the measure of relief it may give.* Whatever is necessary to effectuate the sale of the "title or claim" which the deceased had to the land sought to be sold, the court may lawfully do; but it must act on the title or claim as it finds it. The court must find the amount of the indebtedness, order the sale, fix its terms, and prescribe the manner of conducting it, so far as this is not done by the statute itself; and when made, the court may either approve it, or set it aside for proper cause.

7. As a necessary incident to the power to make the sale, the court must also determine whatever questions may arise in respect to the payment of the purchase money or the sufficiency of the conveyance, and, in short, all questions relating to the sale. In respect to the land, the. court can find only the fact that the deceased had title or a claim to the same, and the sale will be subject to all adverse independent claims of title.

8. Same—*possession—how acquired by purchaser—power of the court ordering sale.* The court, whether the circuit or county court, under whose decree an administrator sells land to pay debts, has no right or authority of law to enter an order requiring the delivery of possession to the purchaser by parties claiming an independent title thereto. The purchaser must establish his right to the possession by an action in a court of law where legal titles are cognizable.

9. CHANCERY—*power to give possession of land.* Courts of equity in the exercise of their ordinary and general chancery jurisdiction, where the right to possession of real property is involved or liens thereon are to be enforced, and all persons in interest are made parties, may, upon the consummation of the suit, do complete justice by putting the successful claimant into possession. And on a sale in a proceeding to foreclose a mortgage or enforce a lien, the court may extend the same relief to a purchaser under the decree.

10. But this rule has its exceptions. Thus, if one, pending the suit, enters, not under a party thereto, or under one who had not derived title to the premises, or had gone into possession under a party pending the suit, he can not be turned out of possession under the decree. So in case of a foreclosure sale, if the person in possession shows a right paramount to the mortgage, the court will not attempt to decide any question of legal title, and the possession must then be sought by proceedings at law.

11. ESTOPPEL—*by failing to assert party's rights.* It is a principle of general application that when the owner of property, real or personal, sees another having no right, or a limited right thereto, about to sell it absolutely to an innocent purchaser, he must speak and assert his ownership, otherwise he will be estopped from setting up his title against such purchaser, or one claiming through him.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. GEORGE R. GRANT, for the appellant:

The writ of assistance will issue in all cases to put a purchaser in possession who has purchased under decree of court. *Kessinger* v. *Whittaker*, 82 Ill. 25; Rorer on Sales, secs. 1-18.

Under the Revised Statutes of 1874, (chap. 37, sec. 49,) there is expressly conferred upon even the probate court, in such proceeding, full power "to make all necessary orders to carry into effect any decree previously entered, including necessary writs therefor." Such a motion is a mere continuance of the original case; and no one can intermeddle *pendente lite,* and if they do, they may be disregarded. Rorer on Sales, secs. 1-18.

In *Bush* v. *Fowler*, 36 Ill. 53, the court fixes the limits of power of giving possession by saying what the court can not do, viz., that the court can not put out one who is not a party and who was in possession before suit was brought. *Richardson* v. *Hadsall*, 106 Ill. 477. See, also, 37 Ill. 300, showing this to be the only exception.

The writ is "*ex debito justitiæ.*" *Beatty* v. *De Forrest*, 12 C. E. 482.

Some difficulties are alleged to exist touching the letting of the plaintiff into possession of an undivided half. This is the form of the proper order in such case. (Freeman on Co-tenancy, secs. 287-289.) On page 295, the order is stated to be, "to let the plaintiff into possession,"—not to put the defendant out.

In *Morse* v. *Finch*, 1 Scam. 495, this court held that forcible detainer may be maintained by one tenant in common against another. In *Bruce* v. *Roney*, 18 Ill. 74, the court held, reversing and remanding, with instructions to follow its judgment, that a writ of possession might become necessary, and should be entered in conformity with its opinion for what was, in that case, an undivided half of the premises.

Mr. JOHN P. WILSON, for the appellees:

A proceeding by an administrator to sell land is purely statutory, and in it the court has no power or authority to determine questions of title or rights of possession. *Beebe* v. *Saulter*, 87 Ill. 521.

The application, here, is to remove obstructions,—not an application in the progress of the cause, when a hearing can be had, but by an order, after the court has granted all the relief asked by the administrator, and after the court has exhausted all authority given by the statute. The administrator could not have asked, or the court granted, a determination of the question as to the right of possession, either before or after a sale.

An administrator takes no kind of an estate, title or interest in the realty of his intestate. At most, he takes but a power of sale upon a deficiency of personal assets. *Ryan* v. *Duncan,* 88 Ill. 146; *Le Moyne* v. *Quimby,* 70 id. 399; *Stone* v. *Wood,* 16 id. 177; *Smith* v. *McConnell,* 17 id. 135.

It is a general and well settled rule that the doctrine of *caveat emptor* applies to all judicial sales, under which falls an administrator's sale of lands to pay debts. The person who buys at such sale must examine for himself. *Tilley* v. *Bridges,* 105 Ill. 339.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

It appears from the record before us that Charles W. Ricketson died testate October 4, 1866, leaving Polly, his widow, and Lizzie, his only child, sole devisees under his will. At the time of his death he was the owner, subject to a vendor's lien for a part of the unpaid purchase money, of the undivided half of the west half of section 3, town 38, range 13, and also of the undivided half of so much of the east half of the same section as lies south of the canal. Henry M. Shepard having been appointed administrator *de bonis non* with the will annexed, on the 17th of June, 1870, filed in the circuit court of Cook county a petition to sell the testator's interest in the above mentioned lands, or so much thereof as might be necessary to pay the debts of the deceased. The widow, daughter, and appellee William Scully, then and now a tenant in possession, were made parties to the petition. The widow and daughter answered, admitting the allegations of the petition, but alleging they had, subsequently to the filing thereof, conveyed their interest in the premises to appellee John V. Le Moyne. Scully entered his appearance, and consented that the order of sale might be granted, which was accordingly done on the 21st of June, 1870. In the following month, proceedings under the petition were enjoined

by Benjamin F. Quimby. Pending the injunction, to-wit, on the 9th of October, 1871, the record of the proceedings in both these suits was destroyed by fire. The record of the proceedings under the petition was restored on the 15th of May, 1875, and the premises, after various suits and protracted litigation, an account of which will be found in *Harding* v. *Shepard et al.* 107 Ill. 264, were finally sold on the 6th of March, 1884, under the order of sale above stated, several parcels of which were purchased by the appellant, George F. Harding, and the residue by George B. Carpenter, who subsequently assigned his bid to Le Moyne, and the administrator's deed was accordingly made to him instead of Carpenter, for the part purchased by the latter. Five separate deeds, bearing the same date of sale, were prepared and executed by Shepard to Harding for the parcels purchased by him, the purchases amounting in the aggregate to $55,000, which was duly paid by Harding. On the 13th of the same month the court, upon a formal application for that purpose, of which all parties in interest had notice, approved the report of sale and the deeds executed to the purchasers. The cause seems to have been transferred from the circuit to the Superior Court, as the proceedings last above mentioned were had in the latter court. On the 26th of May following, the appellant filed in the Superior Court of Cook county a petition, entitled "Henry M. Shepard, administrator *de bonis non* of Charles W. Ricketson, deceased, against Lizzie W. R. Allen and others," setting up his purchases at the administrator's sale, and the conveyances by the administrator to him, as above stated; that Le Moyne and Scully were in possession of the land, and had been since the sale; that although petitioner had demanded possession of the premises, the defendants refused to surrender the same. The petition concludes with a prayer that the court order the defendants to deliver up possession of the premises so purchased by him, to the petitioner. Scully, protesting the court had no power

or jurisdiction to make such order, answered that "he was in possession of the section under a lease from Le Moyne for an undivided half, and from Carpenter for the other half; that Le Moyne and Carpenter had good titles to said premises, and the court had no power to try the validity or the right of possession of defendants, and prayed the rule to be discharged." Le Moyne, without waiving objection to the jurisdiction, and insisting the court had no power to enter the rule, says that he is the owner of the undivided half of said section, and acquired the equitable title more than ten years ago; that the trustees of the canal, in whom was the title, conveyed to him on November 10, 1883; that he has leased to William Scully said undivided half of the west half, and to Dennis Doran an undivided half of the east half of the section. The court, upon the hearing, entered an order denying the petition, which, on appeal, was affirmed by the Appellate Court for the First District. By the present appeal the judgment of affirmance is now before us for review.

In addition to what has already been stated, it is expressly charged in the petition "that Le Moyne and Scully, colluding with one George B. Carpenter, who claims to have a tax deed, set up that Scully has attorned to Carpenter, and delivered possession to Carpenter, and Scully has taken a lease from him." It is manifest from the answers, as well as from what appears upon the face of the petition itself, that there are now existing unsettled conflicting claims between appellant and the defendants in the petition, respecting the property in controversy, and we fail to find anything in the statute under which the proceeding was had, to authorize the Superior or circuit court to investigate, settle or determine these conflicting unsettled titles or claims. The court, in cases of this kind, acts under a limited statutory authority, and its jurisdiction is not to be extended, by implication, beyond what is necessary to give effect to the objects and purposes of the legislature in adopting the act. The power of the court to

adjudicate in any case is necessarily limited in a large degree by the nature and extent of the rights sought to be enforced. Section 1 of the act of 1857, under which the order of sale was obtained, provides, "that when it can be ascertained that the personal estate of any testator or intestate is insufficient to pay the just claims against his or her estate, and there shall be any real estate to which such testator or intestate had *claim or title*, and the executor or administrator has made a just and true account of the personal estate and debts to the county court having jurisdiction thereof, such real estate, or such portion as may be necessary to satisfy the indebtedness of such testator or intestate, and the expenses of administration, may be sold in the manner herein provided." This section, it will be perceived, enumerates in express terms the jurisdictional facts which must .exist before any right or authority whatever is conferred upon the personal representative of the deceased to make an application at all for an order of sale, and these facts must appear upon the face of the petition which is authorized to be filed by the second section of the act, and unless they do so appear the court has no power or authority to make the order. The widow, heirs and devisees of the deceased, and the guardians of minors, if any, together with the occupants of the premises, are required to be made parties, and others interested in the estate may appear, if they see proper, and make themselves parties to the proceeding. For what purpose are these persons made or permitted to become parties to the proceeding? Surely not to settle conflicting titles to the property, for, so far as this proceeding is concerned, it does not matter whether the deceased had the better title or not, nor, indeed, whether he had any title at all. For the purposes of an application of this kind it is sufficient that the deceased had a *bona fide* claim to the land. The statute does not, in express terms, require the claim to be *bona fide*, but that, perhaps, would be implied. The object of making the parties named in the stat-

ute, defendants, is clearly for the purpose of enabling them to see that no injustice is done the estate or those having claims against it, and that the requirements of the statute are complied with. By the 7th section it is provided the procedure upon appearance is to be as in chancery. If, therefore, the petition fails to state all the facts necessary to give the court jurisdiction, a demurrer would be proper, or the defendants might rely on a motion to set the proceeding aside, or treat it as a mere nullity. If the petition is good on its face, but in fact is untrue, an answer will be necessary. The answer may be a simple traverse of the facts alleged in the petition, or it may, if the case warrants, set up any special circumstances which go to show that the debts or claims for the payment of which the land is sought to be sold, are not *bona fide* or legally binding on the estate. Defences of the character mentioned are alone contemplated by the statute. If there were any doubt on this subject it is certainly removed by reference to the provisions of the 8th section. After stating that, upon the hearing, it shall be the duty of the court to hear and examine the allegations and proofs of the parties, etc., the section then proceeds: "And if, upon due examination, the court shall ascertain that the executor or administrator has made a just and true account of the condition of said estate, and that the personal estate of the testator or intestate is not sufficient for the payment of the debts against such estate, the said court shall find, as nearly as can be, the amount of the deficiency, and how much, and if a part, what portion of the real estate described in the petition it will be necessary to sell to pay such deficiency, with the expenses of administration then due or to accrue, and make a decree for the sale thereof."

It is clear, from these several provisions of the statute, that nothing could have been farther from the intention of the legislature than that in a proceeding of this kind there should be any inquiry into or attempted settlement of con-

flicting claims to the property sought to be sold. If the paramount owner should happen to be joined as a defendant to the proceeding, it would doubtless be his duty to assert his rights to the property in his answer,—not for the purpose, however, of forming an issue of the kind to be tried in that proceeding, but for the purpose of giving notice of his rights, to prevent an *estoppel.* It is a principle of general application that where the owner of property, whether real or personal, sees another having no right, or a limited right, thereto, about to sell it absolutely to an innocent purchaser, it is his duty to speak, otherwise he will be thereafter estopped from setting up his title against such purchaser, or one claiming through him.

As the power of the court to adjudicate in a particular case is limited by the nature and extent of the right sought to be enforced, particularly when exercising a mere statutory jurisdiction, as is the case here, it is important to note with particularity just what rights the administrator has in respect to the real estate of his intestate. It is clear, under the repeated decisions of this court, as well as from a general unbroken current of authority on the subject, that he takes no interest in or to the realty. In no event can he take anything more than a mere power, and in the absence of an insufficiency of personal assets to pay the debts of his intestate, he has no more to do with it than a stranger having no connection whatever with the estate. And even when such insufficiency in the personal assets exists, he has, as just remarked, but a mere power to sell for the payment of debts, and this right can only be enforced through the instrumentality of some court specially authorized to do so. Whether this power is conferred on a circuit, probate or county court, makes no difference. The power and jurisdiction to enforce and give effect to the right are the same in either case. As such right can only be enforced through the instrumentality of some court clothed with special authority for that pur-

pose, the act conferring it must be so construed as to give full force and effect to the right. Whatever, therefore, is necessary to effectuate the sale of the "title or claim" which the deceased had to the land sought to be sold, the court may lawfully do, but it must act on the title or claim as it finds it. The right of the administrator does not extend to the removing of clouds upon or obstructions standing in the way of the title, and without such right the court can not apply a remedy, for every remedy which the law affords must necessarily be responsive to some legal right. What, then, may the court properly do where a case is sufficiently made out under the statute? Evidently the court must find the amount of the indebtedness, order the sale, fix its terms, and prescribe the manner of conducting it, in so far as this is not done by the statute itself, and when made, the court must either approve or set it aside. As a necessary incident of the power to make the sale, the court must also determine whatever questions may arise in respect to the payment of the purchase money, or the sufficiency of the conveyance, and, in short, all questions relating to the sale or transfer of the land. In respect to the land itself, the court is required to find a single simple fact, namely, that the deceased had title or a *claim* to it. That others may have claims to the same land, whether before the court or not, is a matter of no consequence, for the court is not authorized to investigate or pass upon them. The lien of the creditors of the deceased upon the land for the payment of their claims, after the personal assets have been exhausted, is coëxtensive with the title or claim of the deceased, whether it be good or bad, and the heirs or devisees take subject to this lien. It follows, therefore, that a valid sale by the administrator or executor would cut off whatever title or claim they had *as* heirs or devisees, but a claim founded upon an independent source of title would not be affected by such sale.

What we have said thus far, is merely preliminary to the main question in the case, namely, whether it is proper for the court, in a proceeding by an administrator to sell land, to enter an order directing the tenants in possession to surrender possession of the premises to the purchaser, for if it is not, of course the present petition can not be maintained. We have dwelt upon the nature and extent of the jurisdiction of the court in this class of cases to an apparently unwarrantable length, for the reason we think they have an important bearing upon the controlling question in the case, as just stated. In support of the general views here expressed we refer to the following authorities: *Choteau* v. *Jones,* 11 Ill. 300; *Smith* v. *McConnell,* 17 id. 135; *Bennett* v. *Whitman,* 22 id. 448; *Myer* v. *McDougal,* 47 id. 278; *Gridley* v. *Watson,* 53 id. 186; *Shoemate* v. *Lockridge,* id. 503; *LeMoyne* v. *Quimby,* 70 id. 399; *Cutter* v. *Thompson,* 51 id. 531; *Ryan* v. *Duncan,* 88 id. 144.

We fully recognize the rule that in controversies before courts of equity, when exercising their ordinary and general chancery jurisdiction, in which the right to possession of real property is involved, or liens thereon are to be enforced, and in which all parties directly interested in the result of the litigation are required to be made parties, either as plaintiffs or defendants, it is not only proper, but it is the duty of the court, upon the termination of the suit, to do complete justice by putting the successful claimant into possession of the premises; or, where the circumstances are such as to require a sale of the property, as in the case of a foreclosure of a mortgage, enforcement of a vendor's lien, and the like, the court should extend the same relief to a purchaser under the decree. (*Aldrich* v. *Sharp,* 3 Scam. 261; *O'Brian* v. *Fry,* 82 Ill. 87; *Kershaw* v. *Thompson,* 4 Johns. Ch. 609.) But this general rule is not without its exceptions. Thus, in 2 Jones on Mortgages, sec. 1664, after having recognized the general rule, and shown that it applies to parties who enter pending

the suit, the author adds: "Though one enter pending the suit, *if he* did not enter under a party to the suit, or under any one who had derived title to the premises, or had gone into possession of them under a party pending the suit, he can not be turned out of possession under the decree,—as, for instance, if he purchased after the commencement of the suit, at a sale under a judgment against the mortgagor recovered before that time." In the following section it is added: "If the person in possession shows a right paramount to the mortgage, of course *the court will not attempt to decide any question of legal title, and the possession must then be sought by proceedings at law.*"

In the case before us it affirmatively appears the premises have been sold for taxes, and that a tax deed for the same has been executed by the proper officer, through which the defendants in the petition now claim. If the tax proceedings resulting in the tax deed were regular, of course they would divest and cut off appellant's title, however good it may have been. But it is answered the tax proceedings were not regular, but wholly defective and void, and that appellant offered to show this fact; yet it is clear this would have involved a judicial investigation, which the court had no power to make. Even had the court been exercising its general chancery jurisdiction, it would not, according to the authority just cited, have undertaken to settle the question of mere legal title, but would have remitted the parties to a court of law, which is more appropriate for the trial of legal titles.

But outside of this consideration, for reasons already stated, we do not think that a court, when exercising this special statutory jurisdiction, has any right or authority to enter an order of the character prayed for in the petition. In many cases that might be suggested it would result in great injustice. To the suggestion that in order to avoid such results the court should go on and consider all conflicting claims and titles, the answer is, as already indicated, the statute

under which the court acts, confers no authority to do so. In addition to this, it is apparent that if such claims were permitted to be litigated in a proceeding of this kind, it would necessarily be productive of great inconvenience and delays in the settlement of estates, whereby the costs and expenses would be largely increased, and the creditors deprived of their just dues. The very reverse of this state of things is certainly contemplated by our entire probate system. A wise and sound policy, as well as common justice to creditors, clearly demands that the estates of dead persons should be wound up with all reasonable dispatch. This the legislature has accomplished, so far as it can be done, by favorable legislation looking to that end, and in giving effect to the statute in question no implications should be indulged in that would lead to a contrary result. Rorer, in his work on Judicial Sales, after recognizing the power and practice of courts of chancery to make orders of the kind sought to be obtained by this proceeding, says: "But these summary methods of putting a purchaser at a judicial sale into possession, or of forcing him to comply with his purchase, are not understood to be within the powers of a mere probate court making sales of a decedent's lands under the statute. The purchaser at such sales will be left to his remedy at law, by action of ejectment, or whatever legal remedy by action stands in lieu thereof, in case, as in some of the States, the action of ejectment be abolished." (Sec. 167.) This, we think, is the correct rule, and it fully supports what we have already said on the subject.

The judgment of the Appellate Court being in accord with this view of the matter, it will be affirmed.

*Judgment affirmed.*