JULIA A. CLAYTON, Admx., Defendant in Error, *vs.* WIL-
LIAM R. CLAYTON, Plaintiff in Error.

*Opinion filed June 20, 1911.*

1. JURISDICTION—*the probate court may determine equities on petition to sell land for debts.* Under section 101 of the Administration act the county or probate court, on petition by an administratrix to sell land to pay debts, may determine the question whether a quit-claim deed to the widow from one of the heirs is valid as against an attaching creditor of the heir.

2. SAME—*a freehold is involved where real estate attached is claimed by a third person.* Where the issue, on petition to sell land to pay debts of the estate, is whether a quit-claim deed to the widow from an heir, conveying part of the land, is valid as against an attachment levied by a creditor of the heir on his interest in such land, a freehold is involved and the Supreme Court has direct appellate jurisdiction.

3. DEBTOR AND CREDITOR—*creditor attacking deed as in fraud of his rights must prove that he is a creditor.* One who answers a petition by an administratrix to sell land to pay debts and seeks to have a quit-claim deed by an heir to the widow set aside as in fraud of his rights as a creditor, must prove that he was, in fact, a creditor of the grantor at the time the quit-claim deed was made.

4. SAME—*when attachment affidavit and papers do not prove that plaintiff is a creditor.* As against a person not a party to the suit, an attachment affidavit and other papers and proceedings in an attachment suit do not prove the existence of an indebtedness or that the plaintiff in the attachment suit was a creditor of the defendant, and unless the fact of the indebtedness is otherwise proved the attachment plaintiff has no standing as a creditor to have a deed to such third person from the attachment defendant set aside.

5. SAME—*when decree refusing to set aside deed is correct.* A decree of the probate court refusing to set aside a quit-claim deed to the widow from an heir as in fraud of the rights of an attaching creditor of the heir is correct, where there is no proof of any fraudulent intent, either as to grantor or grantee, nor that the grantor was insolvent when he made the deed, which was based upon ample consideration.

DUNN, CARTWRIGHT and HAND, JJ., dissenting.

WRIT OF ERROR to the Probate Court of LaSalle county; the Hon. A. T. LARDIN, Judge, presiding.

I. I. HANNA, for plaintiff in error.

S. P. HALL, and BUTTERS & ARMSTRONG, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Julia A. Clayton, as administratrix of the estate of her deceased husband, John S. Clayton, filed a petition in the probate court of LaSalle county for the purpose of obtaining an order to sell certain real estate of which her husband died seized, to pay the debts of the estate. The petition recites that John S. Clayton, who in his lifetime resided at Utica, died May 14, 1909, leaving the petitioner, his widow, and Grant F. Clayton, Charles S. Clayton and Glennie C. Piercy, his children and only heirs-at-law; that decedent owned, at the time of his death, a house and lot in Utica and one hundred and ninety-eight acres of land in LaSalle county; that the debts of the estate amount to $7833.15, exclusive of the expense of administration, and the personal assets amount to $3046.50. The petition alleges that since the death of John S. Clayton, on May 19, 1909, Grant F. Clayton and Sarah Clayton, his wife, by a quit-claim deed, for a valuable consideration, conveyed all of their interest in said real estate to the petitioner, Julia A. Clayton. William R. Clayton, a brother of the decedent and a party defendant to the petition, filed an answer, in which he states that he is a creditor of Grant F. Clayton, and that he had sued out a writ of attachment from the circuit court of LaSalle county against said Grant F. Clayton for $4619.30, and caused the same to be levied upon all interest of said Grant F. Clayton in the real estate described in the said petition, June 15, 1910. In his answer William R. Clayton charges that the quit-claim deed from Grant F. Clayton and wife to Julia A. Clayton, the mother of Grant F. Clayton, was made without any valuable consideration, for the purpose of hindering and delaying the

creditors of said Grant F. Clayton in the collection of their debts, and that said deed was therefore fraudulent and void as to the creditors of the grantor, and prayed that the title to a one-third interest in the said real estate, subject to the debts of the decedent and the widow's homestead and dower, might be found to be in said Grant F. Clayton, and that the attachment writ be held to be a valid lien on the interest of said Grant F. Clayton. The only controversy before the probate court was the question raised by the answer of William R. Clayton in regard to the validity of the quit-claim deed of Grant F. Clayton to his mother. This question was tried by the probate court, and resulted in a decree sustaining the validity of the quit-claim deed and adjudging the title to the interest of Grant F. Clayton to be in Julia A. Clayton, subject to the debts of her husband's estate. William R. Clayton has sued out a writ of error to bring up the record of the probate court for review, and his assignment of error questions the correctness of the decree in so far as it finds that the quit-claim deed was a valid conveyance of the interest of Grant F. Clayton and that said interest was not subject to the lien of the attachment writ.

Before coming to a consideration of the merits of this case two preliminary questions require a brief notice.

Defendant in error suggests that the issue raised by the answer of William R. Clayton was not within the jurisdiction of the probate court in a proceeding to sell real estate to pay the debts of a deceased owner. Section 101 of our chapter on administration, as amended in 1887, has extended the jurisdiction in proceedings of this character, so that the court in which such proceeding is instituted has jurisdiction to direct the sale of real estate disencumbered of all mortgage, judgment or other money liens that are due and direct their payment out of the proceeds of the sale, and may also settle and adjust all equities and all questions of priority between all parties interested therein,

and may investigate and determine all questions of conflict-
ing titles arising between any of the parties to such pro-
ceedings, and may remove clouds from the title of any real
estate sought to be sold and invest the purchaser with an
indefeasible title to the premises.   Said section provides
that the practice in such cases shall be the same as in courts
of chancery, and evidently the legislature has attempted to
confer general chancery powers upon the county and pro-
bate courts in all proceedings of this character.   The con-
troversy here as to the validity of the quit-claim deed and
the lien of attachment was within the jurisdiction of the
probate court in this proceeding.

It is further suggested by defendant in error that this
court is without jurisdiction of this case for the reason that
a freehold is not involved in that part of the decree upon
which error is assigned.   Ordinarily a suit by attachment,
where real estate of the debtor is sought to be subjected to
a lien, does not involve a freehold, but where real estate
has been levied upon by an attachment and the real estate
attached is claimed by an intervening third party adversely
to the defendant in the attachment suit, the title is directly
put in issue and the case then necessarily involves a free-
hold.   (*Ducker* v. *Wear & Boogher Dry Goods Co.* 145 Ill.
653; *Alsdurf* v. *Williams,* 196 id. 244.)   The issue in-
volved in this proceeding and decided by the court below
is one of title between an attaching creditor and a person,
other than the defendant in the attachment, who claims the
title to the attached premises.   A freehold being thus in-
volved, the writ of error is properly sued out of this court.

Upon the merits of this case the plaintiff in error con-
tends that the decree below is not supported by the evi-
dence.   The evidence, which is not conflicting, shows the
following facts:   Grant F. Clayton left the State of Illinois
about fourteen·years before his father's death and located
in the State of California.   He never returned to this State,
either before or after his father's death.   On May 10, 1908,

he wrote his mother a letter, enclosing two notes signed by himself and payable to Julia A. Clayton, one for $1274.96 and the other for $1698.51, and both payable on demand. The letter explains that the notes cover several loans of money and the interest thereon up to the date of the notes, which made a total of $2973.47. These notes were delivered to defendant in error about one year before the death of her husband. On October 15, 1908, Grant F. Clayton again wrote his mother a letter, in which he said: "I wonder if it would be possible for me to secure you in some way by a quit-claim deed to you for anything I might have fall to me from father's estate in Illinois. He is not well and might pass away any time, or the same might happen to me. Let me hear from you. I think it better not to say much to father about this, as such things always irritate him." Julia A. Clayton testified that she purchased the interest of Grant F. Clayton in the estate of his father in LaSalle county on May 19, 1909, for the sum of $6000, subject to the debts of the estate and the cost of administration and also subject to the widow's homestead and dower. She testifies that at the date of the quit-claim deed her son owed her $3204.83, and that by his direction she paid debts for him, as follows: John Carlin, $1050; LaSalle State Bank, $450; Duncan Bros. & Carlin, $225; Wheeler & Leland, $500; Fitzgerald, $40; Haynes, $55; cash to Grant, $500,—making a total of $6024.83. In addition to the real estate in LaSalle county owned by John S. Clayton at the time of his death, the inventory filed by his administratrix shows that he also owned real estate in California valued at $29,700, and a lot in the city of Lake Charles, Louisiana, valued at $700, none of which was included in the quit-claim deed to defendant in error or had otherwise been disposed of by Grant F. Clayton at that time. The only evidence offered by the plaintiff in error was an affidavit for an attachment, subscribed and sworn to by him on June 13, 1910, in which it is stated that Grant

F. Clayton was indebted to plaintiff in error in the sum of
$4619, due May 19, 1909, and that said Grant F. Clayton
was a non-resident of the State of Illinois; a writ of at-
tachment issued on said affidavit out of the circuit court of
LaSalle county, showing a levy, by virtue of said writ, on
the interest of Grant F. Clayton in the premises in question;
a certificate of levy filed by the sheriff June 15, 1910, and
an order of the circuit court showing that Grant F. Clay-
ton had been defaulted. There was no proof of personal
service on the defendant in the attachment proceedings, but
the default order contains a recital that the defendant had
been duly notified by publication. Upon the foregoing evi-
dence the probate court rendered the decree of which the
plaintiff in error complains.

Disregarding the form and looking at the substance of
the controversy between the parties to this record, plaintiff
in error occupies the situation of an attaching creditor who
is seeking to have the conveyance made by the defendant in
the attachment set aside because said conveyance was made
for the purpose of hindering and delaying the creditors of
the grantor in the collection of their debts. In order to
give plaintiff in error any standing in any court to have
the conveyance set aside, it was necessary that he should
prove that he was, in fact, a creditor of the grantor in the
deed. There is no evidence whatever in this record which
even tends to prove, as against the defendant in error, that
plaintiff in error was a creditor of Grant F. Clayton at the
time the quit-claim deed was made or at any time. Plaintiff
in error relies upon his affidavit, and other papers and pro-
ceedings in the attachment case, as establishing all of the
elements of his case against defendant in error. Mrs. Clay-
ton was not a party to that proceeding. Being a stranger
to the case, no admission or statement therein, either of
record or otherwise, by the parties, would be binding upon
her. *Juilliard & Co. v. May*, 130 Ill. 87; *Springer v. Big-
ford*, 160 id. 495; *Yost Manf. Co. v. Alton*, 168 id. 564.

In the case last above cited the situation was similar to the one here presented. The attaching creditor there, as here, relied on the affidavit and other papers to establish his indebtedness on an issue being tried between the attaching creditor and a third party who claimed the property by interplea. There being no other evidence that the plaintiff in the attachment was a creditor of the defendant in that proceeding the trial court directed a verdict for the interpleader. This court, in passing on that question, (p. 566,) said: "There was evidence produced upon the trial which, uncontradicted, showed the appellee to be the owner of the property in question. The appellant introduced no evidence that it was a creditor of the Climax Cycle Company, except the affidavit, bond and other papers in the attachment suit, as before stated. These were no evidence of any indebtedness due the appellant. Without evidence of such an indebtedness the appellant could not raise any question of fraud, it not being shown to be a creditor. (*Springer* v. *Bigford,* 160 Ill. 495.) Without evidence, therefore, that appellant was a creditor, and it not being in a position to raise any question of fraud, it was not error in the trial court to instruct the jury, at the close of all the evidence, to find for appellee."

The decree of the court below might well be sustained because plaintiff in error wholly failed to prove that he was a creditor of Grant F. Clayton at the time the deed in question was made, but there are other matters in respect to which the plaintiff in error failed to establish his contention. There is no proof that Grant F. Clayton was insolvent at the time the deed was made. The inventory, as well as the evidence of the defendant in error, shows that John S. Clayton owned, at the time of his death, unencumbered real estate outside of Illinois worth about $30,000. Grant F. Clayton inherited one-third of this property, subject to the rights of his mother, as widow. The deed in question was made five days after his father's death. This evidence

tends to show that Grant F. Clayton was not insolvent at the time thè deed in question was made to his mother. Again, there is no evidence in this record that proves, or tends to prove, that the quit-claim deed was made by Grant F. Clayton with the fraudulent intent charged, and certainly none that the defendant in error participated in or had any knowledge of such fraudulent intent on the part of the grantor, if such intent, in fact, existed. There is no dispute about the amount or adequacy of the consideration. The evidence is undisputed that the defendant in error paid $6024.83 for the interest of Grant F. Clayton in the LaSalle county land and that she was to take it subject to her homestead and dower rights and the debts of her husband's estate. The evidence shows that this was the full value of his interest. The defendant in error testifies that she knew nothing about Grant's indebtedness to the plaintiff in error at the time she bought his interest. She says that she had understood that Grant was owing the plaintiff in error some amount fourteen years before, when he went to California, but she had heard nothing about such debt since that time.

Under the evidence in this record the decree of the probate court sustaining the deed and ordering the sale of real estate free and clear of the attachment lien was correct, and the same will be affirmed.       *Decree affirmed.*

DUNN, CARTWRIGHT and HAND, JJ., dissenting:

Both the petitioner and the plaintiff in error, William R. Clayton, claimed through Grant F. Clayton, one of the heirs of the decedent, the former as the grantee in a conveyance by the said Grant F. Clayton, the latter as a creditor of said Grant F. Clayton by reason of the subsequent levy of a writ of attachment. The only question in the case was as to the existence of a lien in favor of the plaintiff in error on the interest Grant F. Clayton inherited. The decree found against the plaintiff in error and that there was no such lien. If the decree had been in his favor it

could have found no more than that a lien existed in favor of the plaintiff in error for a certain sum of money, and upon payment of that amount the interest inherited by Grant F. Clayton would have been relieved of the lien. No freehold was involved. The only question tried, or that could have been tried, was the good faith of the conveyance to the petitioner, and the only question adjudicated, or that could have been adjudicated, was the existence of a lien in favor of the plaintiff in error. We have many times held that a suit to establish a lien does not involve a freehold, whether it seeks to foreclose a mortgage or mechanic's lien, to redeem from a mortgage, to have an absolute conveyance declared a mortgage, or to set aside an absolute deed made in fraud of creditors. (*Beach* v. *Peabody,* 188 Ill. 75; *Pearson Lumber Co.* v. *Brady,* 159 id. 378; *Ryan* v. *Sanford,* 133 id. 291; *Adamski* v. *Wieczorek,* 181 id. 361; *First Nat. Bank* v. *Vest,* 187 id. 389.) The relief sought here is to declare the conveyance to the petitioner fraudulent and subject her property to the attachment lien. The cases of *Ducker* v. *Wear & Boogher Dry Goods Co.* 145 Ill. 653, and *Alsdurf* v. *Williams,* 196 id. 244, cited in the majority opinion, do not sustain the jurisdiction of this court. Those were attachment cases in which a third person intervened denying the title of the defendant and claiming the land adversely. The title was thus put directly in issue by the pleadings. Under the statute the question tried was not the existence of a lien by virtue of the attachment, but the ownership of the property. In such case the statute directs a jury to be empaneled to inquire into the right of property. That is the sole issue,— the title. Neither the plaintiff's debt nor his lien is in issue and the judgment of the court does not establish or deny any lien. The judgment is either for or against the claimant absolutely, and establishes the title. In our judgment this appeal should be transferred to the Appellate Court.