CECILIA M. THERENS, Admx., Appellee, *vs.* CLEMENT THERENS *et al.* Appellants.

*. Opinion filed April 22, 1915.*

1. EXECUTORS AND ADMINISTRATORS—*extent to which practice in chancery applies to administrator's sale.* The meaning of the provision of section 101 of the Administration act that the practice with reference to petitions by administrators to sell land to pay debts shall be the same as in cases in chancery is, that after the petition is filed and service is had as provided in the Administration act, then the court proceedings in matters relating to the appearance of the parties, the pleadings, hearing and continuances shall be in accordance with general chancery practice except where otherwise provided by the Administration act.

2. SAME—*section 19 of Chancery act, relating to opening decree within three years, does not apply to sale to pay debts.* Section 19 of the Chancery act, which permits a person who has not received the copy of the notice sent by mail to come in within one year after notice in writing given him of the decree, or within three years after such decree, and petition the court to be heard and answer the bill, etc., does not apply to a proceeding by an administrator to sell land to pay debts.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Probate Court of Cook county; the Hon. CHARLES S. CUTTING, Judge, presiding.

BRADLEY, HARPER & EHEIM, for appellants.

MANIERRE & PRATT, for appellee.

Mr. Justice Craig delivered the opinion of the court:

On August 26, 1907, Peter Therens died intestate at his home in the city of Chicago, leaving Cecilia M. Therens, his widow, and Clement Therens and Joseph Therens, his brothers, and Mary Therens, his sister, as his only heirs-at-law him surviving. Letters of administration were granted on the estate of the deceased on December 23, 1907, by the probate court of Cook county, to Cecilia M. Therens, his widow. In the course of administration, on December 14, 1909, the administratrix filed a petition to sell real estate of the deceased to pay debts, making the brothers and sisters of the deceased, who are the appellants in this court, parties defendant as heirs-at-law of the deceased. An affidavit of non-residence was filed, stating that appellants were non-residents and that their places of residence were known, and correctly giving the residence of Clement and Mary Therens as Ettelbrueck, in the Grand Duchy of Luxemburg, and the residence of Joseph Therens as Liege, Belgium. None of the appellants appeared or answered, and thereafter, on April 11, 1910, they were defaulted and a decree of sale of the real estate described in the petition was entered, finding, among other things, that appellants were duly notified of the proceedings by publication and mailing of notices, as required by law. The sale was advertised and made, and a report of such sale was made to the probate court at the June term, 1910, and approved. Thereafter, on July 18, 1910, the appearance of Bradley, Harper & Eheim was entered in the probate court as the attorneys for appellants, and an order entered that in the future notice should be given to them, as solicitors for the appellants, in all further proceedings in the matter. On January 17, 1911, the administratrix filed her final report in the estate, and on September 18, 1911, appellants filed objections thereto. A hearing was had on the objections on October 20, 1911, when all objections were over-

ruled, the final account and report were approved, and the estate was declared finally settled and closed and the administratrix discharged. On April 18, 1913, within three years of the time of the entering of the order of sale, appellants filed their petition for leave to answer the original petition filed by the administratrix to sell real estate to pay debts, alleging that appellants were not, nor was either of them, summoned in said proceeding or served with process therein; that they were not, nor was either of them, served with a copy of the petition in said proceedings to sell real estate, and that no notice, in writing, of the final order or decree had been received by them or either of them; that they believed that they have a good defense to the claims of Cecilia M. Therens set forth in said petition; that she was not the lawful widow of said Peter Therens, deceased, and that she was not entitled to an estate of homestead or right of dower in said real estate. The prayer was that they may be permitted to answer the petition of the administratrix to sell real estate to pay debts, and to be heard in said proceedings the same as if they had appeared in due season and no decree had been entered, and that said decree may be set aside. The probate court held that it had no jurisdiction to entertain the petition and struck the same from the files. From that order of the probate court appellants appealed to the Appellate Court for the First District, assigning as error the action of the probate court in holding it was without jurisdiction to entertain the petition and striking the same from the files. The Appellate Court affirmed the order of the probate court and granted a certificate of importance, and the appellants have prosecuted a further appeal to this court, assigning as error the action of the Appellate Court in affirming the order of the probate court of Cook county.

Appellants base their right to file the petition in question on that part of section 101 of the Administration act (Hurd's Stat. 1913, p. 27,) which provides that in petitions

to sell real estate to pay debts "such application shall be docketed as other causes, and the petition may be amended, heard or continued for notice or other cause, and the practice in such cases shall be the same as in cases in chancery," and on section 19 of the act to regulate the practice in courts of chancery, (Hurd's Stat. 1913, p. 165,) which provides that "when any final decree shall be entered against any defendant who shall not have been summoned or been served with a copy of the bill, or received the notice required to be sent him by mail, and such person  *  *  * shall, within one year after notice in writing given him of such decree, or within three years after such decree, if no such notice shall have been given as aforesaid, appear in open court and petition to be heard touching the matter of such decree,  *  *  * the person so petitioning may appear and answer the complainant's bill, and thereupon such proceedings shall be had as if the defendant had appeared in due season and no decree had been made." Appellee, on the other hand, insists that the provisions of section 19 have no application to such proceedings under the Administration act, but that, even if they did, appellants failed to bring themselves within the provisions of that section, for the reason that more than one year has elapsed since written notice of the proceedings under which the real estate was sold was brought home to them, through their solicitors, in the final account and report filed by the administratrix, in which the previous sale of all of the real estate of decedent is specifically referred to as having been theretofore made on April 11, 1910. In view of the conclusion that we have reached in the case it will only be necessary for us to pass upon the first contention made by the respective parties.

A proceeding by the administrator to sell real estate to pay debts was unknown to the common law. It is a matter of purely statutory origin, (*Whitman* v. *Fisher,* 74 Ill. 147; *Donlin* v. *Hettinger,* 57 id. 348; *Burr* v. *Bloemer,*

174 id. 638;) and where the heir is sought to be divested of his title in such a proceeding the provisions of the statute must be strictly complied with. (*Burr* v. *Bloemer* and cases cited *supra.*) That the provisions of the statute were strictly complied with in this case except that appellants did not receive the notices mailed to them at their correct address is not denied, and there could be no controversy in this case were it not for the provisions of section 101 of the Administration act above set out. Appellants insist the word "practice," as used in that section, includes all the formal steps in an action or judicial proceeding from the inception of the suit until its final determination in the court of last resort, and those rules of law which direct the course of proceedings for bringing the parties into court and the course of the cause after they are brought into court, citing *Hoffman* v. *Paradis,* 259 Ill. 111, and *Fleischman* v. *Walker,* 91 id. 318, which give this as the commonly understood and generally accepted meaning of the term. But the question before us is not so much what is meant by the word "practice" as what is meant by the use of the words "and the practice in such cases shall be the same as in cases in chancery," as found in section 101 of the Administration act. Counsel for appellee contend that the meaning of the word "practice" as used in this clause is limited by the words "in such cases," immediately following, to the instances or contingencies previously mentioned,—that is, in the matter of docketing the cause, amending the petition, hearing or continuing for notice or other causes,—and that in respect to those matters the legislature intended that the practice to be followed should be the same as in chancery cases; that the word "such" is a relative word, which requires an antecedent, and most usually refers to that which was previously mentioned or specified, citing 37 Cyc. 513, and 27 Am. & Eng. Ency. of Law, (2d ed.) 361.

We do not think that section 101 of the Administration act should be given such a narrow construction as that contended for by counsel for appellee. The portion of the section above set out was first enacted in substantially the same form in 1857. (Laws of 1857, p. 139.) The section was amended in 1887 by adding to the portion above set out the rest of the section as it now appears in the statutes. Under the law of 1857, as under the present law, a petition to sell real estate to pay debts may be filed in either the circuit or the county court. The statute, however, points out the manner of commencing the proceedings and the method of procuring service and bringing the parties into court. It does not leave the practice and procedure in such matters to be governed entirely by the Chancery act but provides a code of its own. Had the legislature intended that all the rules of practice and proceedings provided by the Chancery act should apply to proceedings under this act they would have so provided, as was done in the act relating to divorce, which provides with reference to the practice and procedure in such matter, that "the process, practice and proceedings under this act shall be the same as in other cases in chancery, except as herein otherwise provided, and except that the answer of the defendant need not be on oath," (Hurd's Stat. 1913, sec. 6, p. 910,) instead of prescribing specifically the practice in the matter of the institution of proceedings and the bringing of the parties in interest into court. The Chancery act provides three methods of service, viz., by service of summons, by serving defendants with a copy of the bill, and by publication and mailing of notices. In the Administration act but two of these methods are provided, viz., service of summons and publication and mailing of notices. Service by copy of the bill or petition is entirely omitted. The enactment of express provisions in respect to these matters clearly demonstrates that the legislature did not use the word "practice," in section 101 of the Administration act, in the broad and

comprehensive sense contended for by appellants, as· such construction is entirely negatived by the express provisions for the manner of instituting the suit, bringing the parties into court, procuring the order of sale, the making and report of the sale, the decree approving and confirming the same, and the making of the conveyances vesting the title in the purchaser at such sale.

We think the meaning of the part of section 101 in question is, that after the petition is filed and service had as provided in the act, then in the court proceedings and in matters relating to the appearance of the parties, the pleadings and hearing and continuing the case, except where specifically provided in the Administration act, the general chancery practice shall be followed, and while the identical question involved has not been determined, such seems to be the effect of previous decisions of this court. (*Harding* v. *LeMoyne,* 114 Ill. 65; *Newell* v. *Montgomery,* 129 id. 58; *Bursen* v. *Goodspeed,* 60 id. 277.) In the latter case it was said: "The statute provides for written pleadings by filing answer and replication and forming issues as in chancery proceedings."

The act to regulate the practice in courts of chancery is a broad and comprehensive enactment. The first section of the act authorizes circuit courts and the superior court of Cook county to proceed according to the mode prescribed by the act, and when no provision is made therein, then according to the general usage and practice of courts of equity. There are many of the provisions of the act that cannot be applied to that portion of the Administration act which prescribes the procedure in the sale of real estate to pay debts. While section 101 of the Administration act, long prior to the amendment of 1887 which authorized the court in such a proceeding to investigate and determine all questions of conflicting titles arising between any of the parties, provided that the practice in such cases should be the same as in cases in chancery, it would hardly be con-

tended that prior to the amendment the court could have gone into any questions of title or adjudicated in any manner the equities of the parties in such a proceeding as it could have done in a suit in equity under its general powers as provided in the Chancery act. When the law contained the same provision as now, it was held by this court that a proceeding by an administrator to sell real estate to pay debts was not a chancery proceeding. (*Moline Water Power Co.* v. *Webster*, 26 Ill. 233; *Moffitt* v. *Moffitt*, 69 id. 641; *Bursen* v. *Goodspeed, supra.*) Section 19 of the Chancery act deals with matters that are not strictly matters of practice, as this term is generally understood. While it is included in the Chancery Practice act, it creates and gives certain rights to a certain class of parties defendant in a chancery case and does not deal with matters of practice. In *Clayton* v. *Clayton*, 250 Ill. 433, the court, in construing section 101 of the Administration act, said, on page 436 of the opinion: "Said section provides that the practice in such cases shall be the same as in courts of chancery, and evidently the legislature has attempted to confer general chancery powers upon the county and probate courts in all proceedings of this character." What is there said, however, had reference to the powers of county and probate courts to settle questions of controverted title as provided in the amendment of 1887 to section 101, and the only questions decided were whether the probate court, in a proceeding to sell real estate to pay debts, had power to adjust the equities between an attaching creditor of one of the heirs of the decedent and the grantee of such heir in the real estate sought to be sold and whether in such case a freehold was involved. Bouvier defines "practice" as "the form, manner and order of conducting and carrying on suits or prosecutions in the courts through their various stages, according to the principles of law and rules laid down by the respective courts." This definition has been approved by this court in *People* v. *Raymond*, 186 Ill. 407,

on page 415 of the opinion. There is no confusion or conflict by giving the word "practice" this definition in section 101 of the Administration act. So construed, it becomes clear that the provisions of section 19 of the Chancery act have no application to a proceeding such as the one at bar, and the probate court did not err in striking the petition from the files.

There is another reason why we think the provisions of section 19 of the Chancery act were not intended to apply to proceedings to sell real estate to pay debts under the Administration act. The sole purpose of the latter proceeding is to subject real estate left by a decedent, or such interest as he has therein, to the payment of his debts when the personal estate is not sufficient for that purpose. The statute contemplates the settlement and closing of an estate within a reasonable time after the expiration of one year from the death of the intestate. In order to do this it often becomes necessary to sell the real estate of the deceased in order to pay the claims allowed against the estate. One year is allowed under the present statute after letters of administration are issued in which to present such claims, after which time they are barred as to all property of the deceased which was inventoried. (Hurd's Stat. 1913, chap. 3, sec. 70.) As soon as these claims have been allowed and paid and the assets of the estate have been collected, reduced to cash and distributed, the estate is in a condition to be finally settled and closed. In the ordinary course of administration this is frequently done within less than two years from the death of the decedent. But if the provisions of section 19 of the Chancery act are to be read into this act such a course is rendered practically impossible when service by publication and mailing of notices is had on the defendants to a petition to sell, as it never can be known, in such case, whether or not a valid sale has been made until the expiration of three years from the date of

the order of sale. That such a condition would operate to the detriment of the creditors and heirs is most apparent. Under such circumstances prospective purchasers would be discouraged from bidding anywhere near the value of the land by reason of the uncertainty as to the character of the title acquired at such sale. Conditions such as these are to be avoided. (*Martin* v. *Gilmore,* 72 Ill. 193; *Hobson* v. *Ewan,* 62 id. 146; *Goudy* v. *Hall,* 36 id. 313.) That it was the intention of the legislature to guard against such contingencies we think is quite clear from a consideration of the other provisions of the act. By section 106 a penalty is provided if the administrator makes a sale contrary to the provisions of the act, with the further provision that no such offense shall be deemed to affect the validity of such sale. While this provision was undoubtedly intended to have more particular reference to the proceedings subsequent to the order of sale, still we think the provision clearly demonstrates the intention on the part of the legislature to preserve the stability of such sales. Other provisions, such as those for reporting the sale to the court for its approval or disapproval at the next succeeding term after the sale, and that the administrator's deed, when made, shall be valid and effectual against the heirs and devisees of such decedent and all persons claiming by, through or under them, lend support to this view. The provisions of section 19 of the Chancery act are inconsistent with both the letter and spirit of the provisions of the Administration act which prescribe the procedure in selling real estate to pay debts.

For the reasons given, the order of the probate court and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*